IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSY MORALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20 cv 02175 |
| | ) | |
| NORTHSHORE UNIVERSITY HEALTHSYSTEM, | ) ) | Judge Matthew F. Kennelly |
| | ) | Magistrate Judge Maria Valdez |
| Defendant. | ) | |

**NORTHSHORE UNIVERSITY HEALTHSYSTEM'S LOCAL RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS**

Defendant NorthShore University HealthSystem ("NorthShore"), by its attorneys and pursuant to Fed R. Civ. P. 56 and Local Rule 56.1, submits its Local Rule 56.1 Statement of Additional Material Facts.

1. NorthShore has policies prohibiting discrimination and harassment in the workplace, as well as policies relating to Corrective Action, Attendance and Punctuality, and NorthShore Service Values, which were available to Plaintiff and other employees on NorthShore's Intranet. (Mintz Decl. ¶ 8; Milewski Decl. ¶¶ 3 - 6; NORTHSHORE000177 -181; NORTHSHORE000832 - 835; NORTHSHORE000016 - 22; NORTHSHORE0000442-443.)[1]

---

[1] Citations to Plaintiff's Amended Complaint are cited as ("Am. Compl. ¶ #"] and are included in Defendant's Appendix to its Local Rules 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment [Dkt. 42] at Tab A. Cited excerpts from Documents NORTHSHORE000001 through 000836, produced by Defendant and authenticated in various declarations, are cited as "NORTHSHORE ___" and are included in Defendant's Appendix [Dkt. 42] at Tab C. Citations to the Declaration of Katie Schmid are cited as "(Schmid Decl. [¶ #])," which is included in Defendant's Appendix [Dkt. 42] at Tab D. Citations to the Declaration of Heather Mintz are cited as "(Mintz Decl. [¶ #])," which is included in Defendant's Appendix [Dkt. 42] at Tab E. Citations to the Declaration of Christina Herrington are cited as "(Herrington Decl. [¶ #])," which is included in

Plaintiff had access to NorthShore's Intranet and specifically to NorthShore's policies on its intranet. (Pl. Dep. 119:6 - 120:6.)

2. If a NorthShore employee feels that he or she has been harassed or discriminated against, the employee can report the alleged harassment or discrimination either through their chain of command or to Human Resources, after which there will be an investigation. (Fishman Dep. 141:22 - 142:19).

3. Plaintiff was trained on NorthShore's policies. (Milewski Decl. ¶ 7; NORTHSHORE000030; NORTHSHORE000013 - 15; NORTHSHORE000023 - 24.); (Pl. Dep. 199:12-200:7)

---

Defendant's Appendix [Dkt. 42] at Tab F. Citations to the Declaration of Joyce Milewski are cited as "(Milewski Decl. [¶ #])," which is included in Defendant's Appendix [Dkt. 42] at Tab G.

Cited excerpts from additional Documents NORTHSHORE000001 through 000836 are cited as "NORTHSHORE ___" and are included in Plaintiff's Appendix of Materials in Support of Her Response to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for Partial Summary Judgment [Dkt. #50] at Tabs A - K. Citations to the deposition of Rosy Morales are cited as "(Morales Dep. [page # and line#]") and are included in Plaintiff's Appendix at Tab M. Citations to the deposition of Christina Herrington are cited as "(Herrington Dep. [page # and line#]") and are included in Plaintiff's Appendix [Dkt. #51] at Tab N. Citations to the deposition of Olga Madorsky are cited as "(Madorsky Dep. [page # and line#]") and are included in Plaintiff's Appendix [Dkt. #51-1] at Tab O. Citations to the deposition of Katie Schmid are cited as "(Schmid Dep. [page # and line#]") and are included in Plaintiff's Appendix [Dkt. #51-1] at Tab P. Citations to the deposition of Heather Mintz (Day 2 only, taken on April 13, 2021), are cited as "(Mintz Dep. [page # and line#]") and are included in Plaintiff's Appendix [Dkt. #51-1] at Tab Q.

Citations to day 1 of Heather Mintz's deposition, taken on March 5, 2021, are cited as "(Mintz. Dep. [page # and line#]") and are included in Defendant's Appendix Of Materials in Support of Its Opposition to Plaintiff's Motion for Partial Summary Judgment at Tab 1. (Although Plaintiff cites to Mintz's deposition throughout her Motion for Partial Summary Judgment as well as her Response to Defendant NorthShore's Motion for Summary Judgment, Plaintiff did not actually include day 1 of Mintz's deposition in the Appendix to her Statement of Undisputed Material Facts at Tab Q. Rather, Plaintiff included only day 2 of Heather Mintz's deposition, taken on April 13, 2021.)

Citations to the deposition of Kathy Rosanova are cited as "(Rosanova Dep. [page # and line#]") and are included in Plaintiff's Appendix [Dkt. #51-1] at Tab R. Citations to the deposition of Laura Fishman are cited as "(Fishman Dep. [page # and line#]") and are included in Plaintiff's Appendix [Dkt. #51-1] at Tab S.

4. Plaintiff's work performance throughout her employment at NorthShore was satisfactory or above satisfactory. (Am. Compl. ¶ 25.)

5. From July 2014 until approximately August 2016, Plaintiff worked at a NorthShore medical office located at 1435 Waukegan Road, Glenview, Illinois ("Glenview location"). (Am. Compl. ¶ 15.) While at Glenview, Plaintiff was supervised by Olga Madorsky ("Madorsky") from her start date of July 7, 2014, through approximately October 2015, then by Kathy Rosanova ("Rosanova") from approximately October 2015, through approximately August 2016. (Pl. Dep. 25:7-17; 25:21-26:3.)

6. Plaintiff alleges that in September 2014, two months after she started working at NorthShore, her coworkers at Glenview began to harass her. (Am. Compl. ¶ 19(a). In approximately July 2016, Plaintiff informed Rosanova that Plaintiff had some "issues" with the staff. (Rosanova Dep. 66:2, 66:12-14). Rosanova was not otherwise aware of any harassment from 2014 to 2018. (Rosanova Dep. 72:10-12; 73:13-15; 74:13-16).

7. In mid-August 2016, Plaintiff transferred to NorthShore's Skokie location. (Am. Compl. ¶ 19(cc).)

8. None of Plaintiff's co-workers or supervisors at the Skokie Hospital location had worked with Plaintiff in Glenview. (Herrington Decl. ¶ 7.)

9. While at Skokie, Plaintiff was supervised solely by Christina Herrington from August 14, 2016, through approximately September 24, 2016; then by Herrington and Heather Mintz ("Mintz") from approximately September 25, 2016, through January 1, 2017; then solely by Mintz from approximately January 1, 2017, through June 3, 2017; then by Katie Schmid ("Schmid") from June 4, 2017, through April 20, 2018. (Herrington Decl. ¶ 6; Mintz Decl. ¶¶ 6 - 7; Schmid Decl. ¶ 4.)

10. In approximately October 2016, Herrington told Plaintiff that she had noticed Plaintiff's co-workers were "catty" toward Plaintiff and that Plaintiff should "give it time." (Am. Compl. ¶¶ 19(hh); Herrington Decl. ¶ 10.) Plaintiff told Herrington that she felt "excluded." (Herrington Dep. 89:11-12). Plaintiff did not bring up any claims related to her national origin or color at that time, or at any time or complaint of harassment. (Herrington Decl. ¶¶ 10-11; Herrington Dep. 66:7-9.) Plaintiff did not want Herrington to talk to any of the individuals. (Herrington Dep. 90:7-8).

11. In December 2016, Plaintiff complained to Mintz about her workload. (Am. Compl. ¶ 19(ii)); Mintz Decl. ¶ 11.) Plaintiff did not complain to Mintz about any alleged name calling, nor did she make any allegations pertaining to her national origin or her color at that time, or at any time (Mintz Decl. ¶¶ 11, 14, 16, 17; Mintz Dep. 76:9-20; 78:15-19; 81:6-13.) When Plaintiff complained to Mintz about her workload, NorthShore brought in people to assist. (Pl. Dep. 106:10 - 13.)

12. When Plaintiff complained to Mintz in December 2016 about her workload, Mintz hired additional support for Plaintiff - Rachel Quiros ("Quiros") and Irvin Perez ("Perez"). (Mintz Decl. ¶ 12.) Mintz asked Quiros to "shadow" Plaintiff for training purposes, and she asked Perez to "shadow" Zukancic for training purposes. (Mintz Decl. ¶ 12; NORTHSHORE000524.) Both Perez and Quiros had the title of Medical Assistant/Patient Support Associate (MA/PSA). (Pl. Dep. 202:8, 12-13; 94:17 - 21.) Mintz assigned both Quiros and Perez to assist Morales with her work (Mintz Decl. ¶ 13), and Plaintiff testified that Perez worked closely with Plaintiff. (Pl. Dep. 202:8, 12-13.)

13. Perez worked at NorthShore for only a short time, due to the length of the drive to work. (Mintz Dep. 184:9-11).

14. In March 2017, Plaintiff again reported her workload concerns to Mintz. (Am. Compl. ¶ 19(ll); Mintz Decl. ¶ 14.) Plaintiff told Mintz that the workload was too heavy and the distribution was not fair. (Am. Compl. ¶ 19(ll); Mintz Decl. ¶ 14.) Mintz responded that she would meet with Plaintiff and Selma Zukancic to discuss the workload. (Am. Compl. ¶ 19(ll); Mintz Decl. ¶ 14.) Mintz did in fact meet with Plaintiff and Zukancic to discuss their relative workloads (Am. Compl. ¶ 19(ll)), and Plaintiff said she "fe[lt] better" after the meeting. (Mintz Decl. ¶ 14; NORTHSHORE000540.) Again, Plaintiff did not make any claims related to her color or national origin to Mintz, nor did she make any allegations to Mintz pertaining to name-calling. (Mintz Decl. ¶ 14.)

15. Also in March 2017, Mintz brought in an additional worker to assist Plaintiff with her duties. (Pl. Dep. 108:18-24; Mintz Decl. ¶ 15.) Jasmine Yonan who was a Medical Assistant, transferred to surgical oncology, as an MA/PSA. (Mintz Decl. ¶ 15.) Mintz sent Yonan to train with Plaintiff and Zukancic in March 2017, and she sent Yonan for additional training with Plaintiff in June 2017. (Mintz Decl. ¶ 15; NORTHSHORE000539; NORTHSHORE000544.)

16. In December 2017, Plaintiff states that she again complained about her workload to Mintz. (Am. Compl. ¶ 19(tt).) Mintz responded to Plaintiff that she would receive support from an internal hire named Emily Barazza ("Barazza"). (Am. Compl. ¶ 19(tt); Pl. Dep. 110:12 - 21; Mintz Decl. ¶ 16.) Plaintiff testified that Barazza also has brown skin color. (Pl. Dep. 112:6-10.) Plaintiff told Mintz that she only needed help from Barazza once a week, for 3-4 hours. (Mintz Decl. ¶ 16; NORTHSHORE000573 - 574.) However, Mintz assigned Barazza to work 2 days per week to assist with Plaintiff's work. (Mintz Decl. ¶ 16.) Plaintiff did not

complain to Mintz at that time about any alleged name-calling, nor did she make any allegations relating to her national origin or color. (Mintz Decl. ¶ 16.)

17. In the approximately eleven months from late May 2017 to April 2018, Plaintiff alleges that her Hispanic coworker Natalia Rodriguez ("Rodriguez") made approximately nine comments to Plaintiff pertaining to Plaintiff's national origin or color. (Am. Compl. ¶¶ 19(nn) - (pp)), (rr), (uu), (ww), (ddd) - (eee), (ggg).) Plaintiff alleges that in the same time period, her coworker Roumeliotis also made approximately nine comments to Plaintiff pertaining to Plaintiff's national origin. (Am. Compl. ¶¶ 19(nn), (qq), (ss), (xx) - (bbb), (fff).) Plaintiff also alleges that surgical scheduler Brigetta Blackwell ("Blackwell") told her that she was "too slow." (Pl. Dep. 16:19-20). Plaintiff testified that Blackwell was "appropriate and elaborate" with Zucanic, but "loud and rude" with Plaintiff. (Pl. Dep. 18:17-20.) Blackwell was never Plaintiff's supervisor. (Pl. Dep. 20:22-24.)

18. In early March 2018, NorthShore Human Resources informed Schmid that Morales had been accused of falsifying her timecard by parking at the Emergency Room entrance, walking in to the Hospital to swipe in at the Emergency Department badge reader, and then leaving to park her car. (Schmid Decl. ¶ 14.)

19. Upon learning of that accusation, NorthShore began an investigation, which included Schmid's review of Plaintiff's computer logins from January 2, 2018, through early March 2018 (Schmid Decl. ¶ 15; NORTHSHORE000476 - 480), and Schmid's review of Plaintiff's "badge-ins" from January 2, 2018, through early March 2018. (Schmid Decl. ¶ 15; NORTHSHORE000481 - 511.) Schmid then compared Plaintiff's badging in with her computer logins and made a chart reflecting her findings. (Schmid Decl. ¶ 15; NORTHSHORE000520.) Schmid determined that on fifteen out of twenty occasions that Plaintiff badged in for work and

subsequently logged in to her computer, Plaintiff took more than fifteen minutes to log in. (Schmid Decl. ¶ 15; NORTHSHORE000643.)

20. In the course of her investigation, Schmid also reviewed video footage of Plaintiff swiping in at the Emergency Department entrance and then leaving the building. (Schmid Decl. ¶ 16.) Schmid did not review any photos in her investigation of Plaintiff. (Schmid Dep. 74:15-18; 76:7-8.)

21. In addition to investigating Plaintiff, Schmid similarly investigated Plaintiff's co-workers Roumeliotis, Rodriguez, and Connie Panagakos ("Panagakos") regarding the same alleged misconduct. (Schmid Decl. ¶ 17.) Schmid did not find evidence of timecard theft by Rodriguez or Panagakos; however, she did find evidence of timecard theft by Roumeliotis. (Schmid Decl. ¶ 17; Schmid Dep. 89:17-19.)

22. Following Schmid's review of the time logs, she also viewed video footage of Roumeliotis. (Schmid Decl. ¶ 18.) In the footage, Schmid observed Roumeliotis badging in and then walking back out of the exit. (Schmid Decl. ¶ 18.)

23. On March 23, 2018, Schmid and Mintz informed Plaintiff that she was being suspended immediately, due to security surveillance indicating that she had committed theft against NorthShore by parking her car after clocking in. (Am. Compl. ¶ 21; Schmid Decl. ¶ 19; Mintz Decl. ¶ 18.)

24. Plaintiff admits that on various occasions, she drove to work, left her car outside, entered and clocked in, left the building to park her car, and then finally returned and went to her work station. (Am. Compl. ¶¶ 19(mm), 23; Schmid Decl. ¶¶ 19- 20; Mintz Decl. ¶¶18 - 19.)

25. On April 19, 2018, NorthShore terminated Plaintiff for timecard falsification. (Schmid Decl. ¶ 21; NORTHSHORE000004 -5.)

26. On the same day, NorthShore terminated Plaintiff's co-worker, Roumeliotis (white, European), also for timecard falsification and the same conduct as Plaintiff was terminated. (Schmid Decl. ¶ 22; Am. Compl. ¶¶25; NORTHSHORE000171 - 172.) Roumeliotis tried to resign rather than being terminated, but NorthShore did not accept her resignation. (Schmid Decl. ¶ 22; Mintz Dep. 29:10-23.)

27. Like Plaintiff, Roumeliotis reported to Schmid. (Schmid Decl. ¶ 23.) Plaintiff admits that Roumeliotis was "similarly situated" to Plaintiff. (Am. Compl. ¶ 25.)

28. Plaintiff never complained of discrimination or harassment related to her national origin or color, to any of her supervisors. (Schmid Decl. ¶ 13; Mintz Decl. ¶¶ 11, 14, 16, 17; Herrington Decl. ¶ 11; Schmid Dep. 136:7-8; Herrington Dep. 66:7-9; Mintz Dep. 76:9-20; 78:15-19; 81:6-13; Madorsky Dep. 50:22-51:4; Rosanova Dep. 72:10-12; 72:13-15,73:11; 74:13-16.)

29. None of Plaintiff's supervisors were aware that Plaintiff allegedly experienced "discrimination," for them to have had the opportunity to correct the same. (Madorsky Dep. 43:8-20; 51:1-4; Rosanova Dep. 73:13-15; 74:13-16; Schmid Dep. 136:19- 137:2; Mintz Dep. 78:15-19; Herrington Dep. 91:19-92:15; Schmid Decl. ¶ 13; Mintz Decl. ¶¶ 11, 14, 16, 17; Herrington Decl. ¶ 11.)

30. After Plaintiff was suspended for time card falsification in March of 2018, she for the first time (through her attorney) complained of potential discrimination based on her ethnicity and national origin. (Fishman Dep. 96:20-24; 97:19-22; 99:4-6; 10-13.) Upon her complaint, NorthShore launched a prompt and thorough investigation, ultimately failing to substantiate Plaintiff's allegations. (Fishman Dep. 138:19 - 140:11) (Pl. Dep. 187:22-188:6; 190:5-22.)

31. On February 13, 2020, Plaintiff filed a Complaint against Defendant, alleging that Defendant discriminated against her on the basis of national origin and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Illinois Human Rights Act (the "IHRA"), and that Defendant retaliated against her in violation of Title VII and the IHRA. (Dkt. No. 1, Notice of Removal, ¶ 1.) On April 7, 2020, Defendants removed the action to this Court (Dkt. No. 1, Notice of Removal), and on July 13, 2020, Plaintiff filed an Amended Complaint. (Am. Compl.) The Amended Complaint contains approximately 66 factual allegations relating to alleged discrimination, harassment, and/or retaliation. (Am. Compl. ¶¶ 19 - 26.) Of these, approximately 39 of the allegations allege events that occurred more than 300 days before Plaintiff filed her charge of discrimination. (Am. Compl. ¶¶ 19(aa) - (mm).) On July 25, 2020, the Court dismissed the individual Defendants. (Dkt. No. 24).

32. Plaintiff's Amended Complaint alleges national origin hostile work environment in violation of Title VII (Count I) and the Illinois Human Rights Act ("IHRA") (Count V); national origin discrimination under Title VII (Count II) and IHRA (Count VI); color discrimination under Title VII (Count III) and IHRA (Count VII); and retaliation in violation of Title VII (Count IV) and IHRA (Count VIII). (Am. Compl. ¶¶ 30 - 127.) Plaintiff's counts alleging discrimination (Counts II, III, VI, and VII) allege Plaintiff's termination as a basis. Plaintiff's counts alleging hostile work environment (Counts I and V) do <u>not</u> allege Plaintiff's termination as a basis.

33. Plaintiff did not allege "harassment" against manager Katie Schmid in her Amended Complaint. (Am. Compl., *infra*.) All of the remarks and harassing conduct alleged by Plaintiff were by Plaintiff's coworkers. (Am. Compl., *infra*.)

| | |
|---|---|
| **DATED: July 19, 2021** | Respectfully submitted, |
| Marc R. Jacobs (mjacobs@seyfarth.com)<br>Alexandra S. Davidson (adavidson@seyfarth.com)<br>SEYFARTH SHAW LLP<br>233 South Wacker Drive, Ste. 8000<br>Chicago, IL 60606<br>(312) 460-5000 | NORTHSHORE UNIVERSITY HEALTH SYSTEM<br><br>By   */s/ Alexandra S. Davidson*  <br>       One of Its Attorneys |

## **NOTICE OF FILING AND CERTIFICATE OF SERVICE**

I, Alexandra S. Davidson, an attorney, certify that on July 19, 2021, I caused a true and correct copy of NORTHSHORE UNIVERSITY HEALTHSYSTEM'S LOCAL RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS to be filed with the Clerk of the United States District Court for the Northern District of Illinois and to be served upon all counsel of record through the Court's CM/ECF system.

*/s/ Alexandra S. Davidson*