IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSY MORALES, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 20 C 2175 |
| NORTHSHORE UNIVERSITY HEALTHSYSTEM,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rosy Morales has sued her former employer NorthShore University HealthSystem for violations of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act (IHRA). She alleges that, while working for NorthShore, she was discriminated against, subjected to a hostile working environment, and retaliated against for reporting this mistreatment to her supervisors. NorthShore has moved for summary judgment on all counts, and Morales has moved for partial summary judgment as to liability and one of NorthShore's affirmative defenses. For the reasons stated below, the Court denies both sides' motions.

## Background

NorthShore operates a healthcare delivery system comprising six hospitals in

---

[1] The complaint originally named other defendants, but they were dropped in the amended complaint. The Court dismissed these defendants in an order dated July 25, 2020.

the Chicago-land area. Morales is a woman of Mexican descent residing in Cook County, Illinois. From July 2014 through April 2018, Morales worked for NorthShore as a patient support associate, first at its Glenview location before transferring to its Skokie location in August 2016.

Morales contends, in her deposition and briefings, that she was subject to consistent "bullying, harassment, and discrimination" at both the Glenview and Skokie locations. Pl.'s Resp. to Def.'s Mot. at 2. According to Morales, her coworkers at the Glenview location "constantly name call[ed] [her] and insult[ed] her Mexican heritage," calling her "negra" and the department slave. Pl.'s Local Rule 56.1 Stat. ¶ 22. She says that her Glenview coworkers joked that she drove her father's pickup truck to work because she was there to pick up scrap metal and that they made comments comparing her to cleaning and kitchen staff. Def.'s Resp. to Pl.'s Local Rule 56.1 Stat. at 10–11 ("She was identified as the 'Mexican who worked probably like a drug lord, who probably had a tunnel in the basement'; she was told she was 'probably treated better in the kitchen than she was in the department' . . . .").

This alleged discrimination and harassment continued, Morales contends, after her transfer to the Skokie location. For example, Morales's new coworkers called her an idiot, told her that only Latinas and Mexicans did the dirty work, and suggested that she had an escape tunnel in the basement, like the drug lord El Chapo. One surgical scheduler with whom Morales worked "repeatedly harassed and bullied [her] to hurry up her work" and "told [her] that if she was Mexican, she could work a little harder when she needed things done quickly." *Id.* at 10–12. In addition to these comments, Morales contends that she was given a workload heavier than those of white and non-Mexican

2

patient support associates.

The parties dispute whether Morales reported the alleged discrimination and harassment to her supervisors or other NorthShore employees.  At the Glenview location, Morales was supervised by Olga Madorsky from her start date through approximately October 2015, then by Kathy Rosanova from approximately October 2015 through approximately August 2016.  At the Skokie location, Morales was supervised by Christina Herrington from August 2016 through approximately September 2016; then by Herrington and Heather Mintz from approximately September 2016 through January 2017; then by Mintz from January 2017 through June 2017; then by Mintz and Katie Schmid from June 2017 through April 2018.  NorthShore does not dispute that Morales approached Mintz and Schmid about her heavy workload at the Skokie location, but it denies that she reported any discrimination or harassment on the basis of color or national origin to any of her supervisors.

In March 2018, NorthShore Human Resources informed Schmid that Morales had been accused of timecard fraud, specifically, that she was consistently parking her car in front of the building to swipe in to work before parking her car in the parking lot.  Schmid investigated the matter and determined that, between January 2, 2018 and early March 2018, Morales logged in to her computer more than fifteen minutes after she swiped in to work.  Schmid also claims to have reviewed video footage of Morales swiping in to work and subsequently leaving the building.  On March 23, 2018, NorthShore suspended Morales.  The company terminated her employment several weeks later, on April 19, 2018.  On the same day, NorthShore terminated her coworker Kanella Roumeliotis, also for claimed timecard falsification.

On March 27, 2018, Morales filed a charge of discrimination with the Illinois Department of Humans Rights (IDHR), alleging discrimination on the basis of ethnicity, sexual harassment, and retaliation. The IDHR issued her a notice of right to sue, and Morales then sued NorthShore in state court, asserting claims under Title VII and the IHRA. Northshore removed the case to this district on the basis of federal question jurisdiction. As indicated earlier, both sides have now moved for summary judgment.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When parties file cross-motions for summary judgment, courts "construe all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted).

### A. Timeliness

A plaintiff must file a charge of discrimination within 300 days of an alleged act of discrimination, or she is barred from filing suit on the alleged act. *See Kuhn v. United Airlines, Inc.*, 640 F. App'x 534, 537 (7th Cir. 2016); *see also* 42 U.S.C. § 2000e-5(e)(1); 775 ILCS 5/7A-102(A)(1). NorthShore argues that Morales cannot bring any claims premised on acts occurring before May 31, 2017, 300 days before her March 27, 2018 IDHR charge. Morales argues that her claims are not time-barred based on the

continuing violation doctrine.[2]

The continuing violation doctrine "is usually invoked to defeat a statute of limitations bar for conduct that falls outside the relevant period." *Vance v. Ball State Univ.*, 646 F.3d 461, 468 (7th Cir. 2011). But this doctrine applies only to hostile work environment claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2013); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "A Title VII plaintiff seeking redress for a series of discrete discriminatory acts cannot avoid the effect of the limitations period by arguing that the discrete acts are 'plausibly or sufficiently related.'" *Id.* (quoting *Morgan*, 536 U.S. at 111–14). Counts 2, 3, 6, and 7 of the amended complaint allege discrimination on the basis of national origin or color. In assessing these claims, the Court considers only alleged acts of discrimination occurring after May 31, 2017.[3]

In contrast, the Supreme Court has stated that hostile environment claims by "[t]heir very nature involve[] repeated conduct." *Morgan*, 536 U.S. at 115. Thus "a hostile-work-environment charge is timely as long as *'any* act falls within the statutory time period,' even if the charge encompasses events occurring prior to the statutory time period." *Adams*, 742 F.3d at 730 (quoting *Morgan*, 536 U.S. at 120) (emphasis in the original). NorthShore cites a couple of pre-*Morgan* cases to argue that the continuing violation doctrine does not apply because Morales transferred to a different

---

[2] The continuing violation doctrine analysis is the same for Morales's federal and state claims. Illinois state courts look to Title VII cases for guidance regarding the continuing violation doctrine. *See Graves v. Chief Legal Couns. of Ill. Dep't of Hum. Rts.*, 327 Ill. App. 3d 293, 297, 762 N.E.2d 722, 725 (2002).

[3] Morales also asserts retaliation claims. These claims are solely predicated on her suspension and termination, which are undeniably within the statutory period.

5

location and her supervisors and coworkers were different during her time at the Skokie location. The Court overrules NorthShore's argument because it is inconsistent with the Supreme Court's holding in *Morgan*. The Court thus considers all alleged acts of harassment in evaluating Morales's hostile work environment claims.

**B.     Scope of charge**

NorthShore also argues that Morales's termination and color discrimination claims are outside the scope of her IDHR charge. It contends that these claims are barred for failure to exhaust administrative remedies. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1851 (2019). The Court disagrees. It is well-settled that an employment-discrimination plaintiff may bring claims outside her charge if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *See Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005); *see also Ford v. Marion Cty. Sheriff's Off.*, 942 F.3d 839, 857 n.11 (7th Cir. 2019). "Claims are like or reasonably related when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citation omitted) (internal quotation marks omitted).

Morales's color discrimination claims involve the same allegedly discriminatory acts as her national origin claims. The only difference between the claims is the alleged basis on which NorthShore discriminated against her, and in this case there's a readily apparent relationship between the two (Mexican national origin and color). The claims are reasonably related, and the color discrimination claims reasonably would be

6

expected to be discovered in the course of an investigation into Morales's national origin discrimination claims.

Morales's termination claims are also within the scope of her charge. Although Morales filed her IDHR charge before she was terminated, her termination directly followed from her suspension, which she referenced in her charge. The two adverse actions involved the same people, the same facts, and were interrelated. Additionally, the termination claims could reasonably be expected to grow out of an investigation into her allegations involved in her suspension claims. Thus neither of Morales's claims are barred for failure to exhaust.

**C.     Discrimination claims**

Counts 2, 3, 6, and 7 of the amended complaint allege discrimination on the basis of national origin and color. "When a defendant moves for summary judgment, the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Purtue v. Wis. Dep't of Corrections*, 963 F.3d 598, 602 (7th Cir. 2020) (quoting *Johnson v. Advocate Health Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). Regardless of "[w]hether a plaintiff offers direct or circumstantial evidence of discrimination," "all evidence belongs in a single pile and must be evaluated as a whole." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 938, 957 (7th Cir. 2021) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)).

One way to prove employment discrimination is through the *McDonnell Douglas* burden-shifting framework. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021)

(citation omitted); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this method, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff makes such a showing, the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for its actions. *Id.* Once the employer does so, the burden shifts back to the plaintiff to present evidence that the stated reason is pretext for discrimination. *Id.* at 804.

1. **Prima facie case**

To establish a prima facie case of discrimination, the plaintiff must show: "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). It is undisputed that Morales falls into a protected class for both her color and national origin discrimination claims. It is also undisputed that suspension and termination are adverse employment actions. Thus the Court focuses its analysis on the second and fourth elements of the prima facie case.

a. **NorthShore's legitimate expectations**

Although courts must typically address the prima facie case before the pretext issue, *see Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002), "sometimes the analysis of the legitimate expectations inquiry merges with the pretext analysis." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). In such cases, the question that the court must address is "whether the employer's stated nondiscriminatory ground for the action . . . is the true ground of the employer's action

rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

NorthShore argues that Morales failed to meet its legitimate expectations because she violated its timekeeping policies. Morales admits that, on various occasions, she would badge in to work before parking her car, but she maintains that such action is not a violation of NorthShore's legitimate expectations because "NorthShore selectively enforces its policies in a discriminatory manner." Pl.'s Resp. to Def.'s Mot. at 5. She contends that other employees violated similar policies and were not terminated and that NorthShore's investigation into her supposed timekeeping violations was deficient in several ways.

There is a genuine factual dispute on this point that precludes summary judgment. As discussed in more detail below, Morales presents evidence indicating that NorthShore did not terminate other employees for similar violations of company policy. Specifically, there is evidence that such employees were given warnings and allowed to continue working. In contrast, NorthShore fired Morales without warning after it discovered her alleged timekeeping violations. The Seventh Circuit has held that "when a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner . . . the second and fourth prongs merge—allowing plaintiffs to . . . proceed to the pretext inquiry." *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007) (citation omitted). Additionally, the Seventh Circuit has held that evidence of a faulty or improper investigation resulting in termination can create a genuine dispute of fact. *See Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010) (holding that summary judgment was not

appropriate because of the "unusual way" in which the decision to terminate the plaintiff was reached).

### b.     Similarly situated employee

NorthShore argues that the similarly-situated-employee element of the prima facie case is not met because it treated Morales and Roumeliotis (white and European) the same by firing both of them on the same day for the same misconduct.  Morales disputes that Roumeliotis was treated equally.  She testified that Roumeliotis was fired only after Morales notified NorthShore that other employees violated the same policy and that she was being inappropriately "singled out."  Pl.'s Resp. to Def.'s Mot. at 5.  If true, the fact that Roumeliotis was fired after Morales suggested that NorthShore was engaging in unequal treatment could persuade a reasonable jury that NorthShore treated similarly situated employees outside of Morales's protected class better than it treated her.  This dispute is sufficient to defeat summary judgment.

That aside, Morales also points to several employees who received second chances after violating NorthShore policies.  NorthShore argues that these employees are not similarly situated because their misconduct was not similar to Morales's.  There is a genuine factual dispute on this point. Although the other employees violated different company policies, the Seventh Circuit has stated that comparators "need not be identical in every conceivable way."  *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012).  "So long as the distinctions between the plaintiff and the proposed comparators are not 'so significant that they render the comparison effectively useless,' the similarly-situated requirement is satisfied."  *Id.*  There are a number of similarities between Morales and the employees she references:  they had the same job and the

10

same supervisor, and they all are claimed to have violated company policies. The differences between the timekeeping policy that Morales allegedly violated and the policies that the proposed comparators violated—for example, parking in patient parking lots, improper badging in, spending working hours on the internet—arguably are not so great as to render the comparison between Morales and these individuals "effectively useless." The point should be decided after a trial.

    2.    **Pretext**

For the reasons discussed in the "legitimate expectation" section, there is a genuine factual dispute regarding whether NorthShore's reason for terminating Morales was pretextual.

**D.    Hostile work environment claims**

In counts 1 and 5 of the amended complaint, Morales asserts hostile work environment claims under Title VII and the IHRA. There are four elements of a hostile work environment claim: (1) the plaintiff was subject to unwelcome harassment; (2) based on protected classifications; (3) that was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis to hold the employer liable. *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019). The third element involves both subjective and objective components. *Id.* at 561. "In other words, [the plaintiff] must show not only that a reasonable person would find the workplace hostile or abusive . . . but also that he himself perceived it that way." *Id.* In assessing this element, courts "look at all of the circumstances, including the frequency of the discriminatory conduct, how offensive a reasonable person would deem it to be, whether it is physically threatening or

11

humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim." *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013). Finally, an employer is liable for a hostile work environment created by the plaintiff's coworkers when the employer was negligent in discovering or remedying the harassment. *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006).

NorthShore contends that there is no genuine factual dispute regarding the third element. Specifically, it argues that Morales alleges only "off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." Def.'s Mot. at 13 (quoting *Melgoza v. Rush Univ. Med. Ctr.*, No. 17 C 6819, 2020 WL 6565235, at *12 (N.D. Ill. Nov. 9, 2020)). NorthShore further contends that there is no basis for holding it liable for the conduct of Morales's coworkers. To this end, it contends that the evidence demonstrates that Morales never reported any of the alleged harassment by her coworkers to her supervisors.

The Court disagrees. There are genuine disputes regarding (1) whether the alleged harassment was sufficiently "severe or pervasive" to be actionable and (2) whether Morales reported the harassment to her supervisors, thus providing a basis for employer negligence. With respect to the former, Morales testified to dozens of abusive, inappropriate, and racially insensitive comments and actions directed at her by her coworkers during her employment at NorthShore. A reasonable jury could find that the conduct went far beyond "unpleasantries" that are "common in the workplace." She alleges almost sixty instances of coworker harassment over the course of four years, including several months with more than four instances of harassment. A reasonable

12

jury could find that this conduct—which, according to Morales, included referring to her as a "negra" and the "department slave," invoking negative stereotypes of persons of Mexican origin, and suggesting that as a Mexican-American she was likely conducting menial labor—would be offensive to a reasonable person in a way that altered the conditions of employment. Many of these incidents occurred in front of others and would reasonably have caused the recipient considerable embarrassment. Although Morales was able to continue performing her job satisfactorily, this does not foreclose the possibility that the alleged actions and statements by her coworkers would be considered, from an objective standpoint, to interfere with a reasonable employee's work performance. Indeed, Morales claims she experienced depression, anxiety, and severe stress resulting in two miscarriages.

On the second issue argued by NorthShore, the parties present competing evidence regarding whether Morales reported the harassment to her supervisors. Morales says she did; NorthShore cites the testimony of her former supervisors who say she didn't. Deciding between these competing narratives involves a credibility determination that a court cannot appropriately conduct on summary judgment. The matter must be decided after a trial.

### E.     Retaliation claims

Counts 4 and 8 of the amended complaint present Morales's retaliation claims. To establish a claim of retaliation, a plaintiff must show that (1) she engaged in a protected activity, such as reporting unlawful harassment or discrimination; (2) the employer took a materially adverse action against her; and (3) there is a causal link between the protected activity and the adverse action. *Poullard v. McDonald*, 829 F.3d

13

844, 856 (7th Cir. 2016). NorthShore states that there is no genuine dispute of material fact regarding the first and third elements. Not so. As explained above, there is a genuine factual dispute regarding the first element, namely, whether Morales reported the harassment she claims to have experienced.

Additionally, the Court finds that there is a genuine dispute regarding the third element. Morales testified that she reported the unlawful harassment and discrimination to Schmid in February 2018, only a month before her suspension. *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998) (stating that the nexus requirement is met when "the employer's adverse action follows fairly soon after the employee's protected expression"). NorthShore argues that Morales cannot show a causal link between her alleged reporting and her suspension and termination because the adverse actions were premised on her timekeeping violations. But, as previously discussed, there is a genuine dispute regarding whether this justification for suspension and termination was pretextual. Thus the Court finds that there is a genuine dispute regarding whether Morales's reporting was the cause of her suspension and termination.

**F.     Partial summary judgment regarding liability**

Morales filed a motion for partial summary judgment regarding NorthShore's negligence in failing to prevent or correct any discrimination, harassment, or retaliation against her. Because there is a genuine dispute of material fact regarding whether Morales reported the alleged coworker harassment to her supervisors at NorthShore, the Court denies Morales's motion for partial summary judgment.

## Conclusion

For the foregoing reasons, the Court denies both parties' motions for summary

judgment [dkt. nos. 40 & 49]. The case is set for a telephonic status hearing on February 8, 2022 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement. The following call-in number will be used: 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 2, 2022